UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS BOWERS and PORTIA JOHNSON, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-0411-B |
| TRINITY GROVES, LLC, LARRY MCGREGOR, PHIL ROMANO, STUART FITTS, and JOHN DOES 1–5, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Trinity Groves, LLC ("TG") and Larry McGregor (together, "Defendants")'s Motion to Dismiss (Doc. 11). For the reasons below, the Court **GRANTS** the motion and **DISMISSES** Plaintiffs' claims against TG and McGregor **WITHOUT PREJUDICE**. However, the Court **GRANTS** Plaintiffs leave to amend their complaint within **THIRTY (30)** days of the entry of this Order. Finally, the Court **DENIES** Defendants' request for attorney's fees, as set forth in their motion to dismiss, **WITHOUT PREJUDICE**. Doc. 11, Defs.' Mot., ¶ 31.

# I.

# BACKGROUND[1]

*A.     Factual Background*

In April 2018, Plaintiffs Thomas Bowers and Portia Johnson, a Black man and woman, drove to a restaurant and parking complex in Dallas, Texas known as "Trinity Groves." Doc. 7, Second Am. Compl., ¶¶ 10–11, 13. Trinity Groves is owned and operated by TG. *Id.* ¶ 12. Plaintiffs valeted Bowers's vehicle at "a valet stand located on the Trinity Groves property" and "proceeded to have dinner at a restaurant located at Trinity Groves for approximately two hours." *Id.* ¶¶ 14–16. After dinner, Plaintiffs picked up their vehicle from the valet attendant and drove home. *Id.* ¶¶ 17–18. The next morning, Plaintiffs noticed that designer sunglasses were missing from the vehicle. *Id.* ¶ 19. And over the following days, they realized that other items, including "a laptop, . . . various clothing items, a Rolex watch, and approximately $9,600 cash," were missing from the "cabin, consoles, and trunk of the Bentley[.]" *Id.* ¶¶ 19–20. Plaintiffs allege that the items were stolen by the valet attendant. *See id.* ¶¶ 21–28.

Bowers called TG's offices "on several occasions to complain" about the theft. *Id.* ¶ 21. He spoke with an employee and then a manager—who Plaintiffs believe was either McGregor, Defendant Phil Romano, or Defendant Stuart Fitts—both of whom "were incredibly rude and dismissive[.]" *Id.* ¶¶ 21, 23. "The employee and manager refused to return the items, compensate Plaintiffs for their losses, or assist Mr. Bowers with his claim, including refusing to provide a

---

[1] The Court derives the factual background from Plaintiffs' Second Amended Complaint (Doc. 7). For purposes of this Order, the Court takes all of Plaintiffs' factual assertions as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).

procedure for making a formal claim with [TG] or its insurer." *Id.* ¶ 22. The manager did, however, provide Bowers with "the phone number of the valet company." *Id.* ¶ 25. Bowers "articulated to the manager that [Bowers] believed he was being discriminated against" on account of his race. *Id.* ¶ 24. Particularly, Bowers expressed his belief that TG "refused to believe his account because he was a Black man." *Id.*

Bowers then called the valet company, Advantage Valet Platinum, LLC ("Advantage"). *Id.* ¶ 26. Bowers spoke with Advantage's manager "and demanded that [Advantage] return the items or compensate him for Plaintiffs' losses." *Id.* ¶ 27. Advantage's manager refused Bowers's demand. *Id.* ¶ 28. And when Bowers "sought information in order to file a claim with [Advantage] or its insurance company," Advantage's manager "refused to provide such information." *Id.* ¶ 29. Bowers continued to follow up with TG and Advantage "in an attempt to obtain compensation" for the stolen items, but "[n]either TG . . . nor [Advantage] agreed to compensate Plaintiffs" or "provided information to allow Plaintiffs to file a formal claim or a third-party insurance claim for their losses." *Id.* ¶ 30.

B.  *Procedural History*

On April 20, 2020, Plaintiffs filed suit against TG, McGregor, Romano, Fitts, and John Does 1–5 in Texas state court, asserting claims for theft, breach of contract, conversion, liability under the Texas Theft Liability Act ("TTLA"), and vicarious liability. Doc. 1-1, Notice of Removal Exs., 5–8 (original pet.). Plaintiffs then amended their petition and added claims for civil-rights violations under 42 U.S.C. §§ 2000a and 1981. *Id.* at 93 (first am. pet.).

Defendants TG and McGregor removed the case to this Court on February 26, 2021, invoking the Court's federal question and supplemental jurisdiction. Doc. 1, Notice of Removal, 6.

Plaintiffs filed a Second Amended Complaint (Doc. 7) on March 26, 2021. On April 9, 2021, Defendants filed a motion to dismiss (Doc. 11). The motion is ripe for review.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina*, 495 F.3d at 205 (quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 547 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it

has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

In their Second Amended Complaint, Plaintiffs assert claims for: (1) theft under the TTLA; (2) breach of contract; (3) conversion; (4) negligence; (5) negligent entrustment; (6) premises liability; (7) civil-rights violations under 42 U.S.C. § 2000a; (8) civil-rights violations under 42 U.S.C. § 1981; and (9) vicarious liability. Doc. 7, Second Am. Compl. ¶¶ 31–90. Defendants seek to dismiss all claims against TG and McGregor for failure to state a claim. *See generally* Doc. 11, Defs.' Mot. Below, the Court addresses each of Plaintiffs' claims as asserted against TG and McGregor, beginning with their claim for vicarious liability, and dismisses each.

A.   *Plaintiffs' Vicarious-Liability Claim Against TG Is Dismissed.*

Plaintiffs fail to sufficiently allege a vicarious-liability claim against TG because they fail to allege facts that would prove an agency relationship between TG and the valet attendant or Advantage. *See* Doc. 7, Second Am. Compl., ¶¶ 86–90.

Plaintiffs claim that TG is vicariously liable for the theft of Plaintiffs' property, alleging conclusorily that "the valet attendants responsible for [Bowers's] vehicle were either employees or contractors/authorized agents within the control of [TG] and/or Advantage at the time [the theft] occurred" and "Advantage was an authorized agent within the control of TG[.]" Doc. 7, Second Am. Compl., ¶¶ 87–88. However, "[t]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough." *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *5 (E.D. Tex. Aug. 8, 2019)

(quoting *Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014)).

"Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (citations omitted). "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam) (citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944)). An agency relationship exists when the principal has control over the agent and both parties consent to the agent acting on the principal's behalf. *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (citations omitted). Because "an independent contractor has exclusive 'control over the means and methods' of his work, . . . an 'entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person.'" *Lovison v. Gleason*, 2016 WL 3595630, at *3 (N.D. Tex. July 5, 2016) (quoting *Baptist Mem'l*, 969 S.W.2d at 947). To determine whether a worker is an agent or an independent contractor, Texas courts generally consider five factors:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

*Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (per curiam) (citations omitted).

Here, Plaintiffs allege no facts that, if true, would prove TG's vicarious liability. Indeed, some of Plaintiffs' allegations cut against a finding of vicarious liability. For example, Plaintiffs appear to use the terms "employees," "contractors," and "agents" interchangeably. *See* Doc. 7, Second Am.

Compl., ¶ 87. However, whether the valet attendants were TG's employees or agents, rather than contractors, is significant to Plaintiffs' vicarious-liability claims because principals are not generally vicariously liable for the actions of independent contractors. *See Baptist Mem'l*, 969 S.W.2d at 947. In addition, Plaintiffs' allegation that TG's "manager provided Mr. Bowers the phone number of the valet company," rather than TG handling Bowers's complaint itself, suggests a lack of control over Advantage rather than an agency relationship. Doc. 7, Second Am. Compl., ¶ 25.

Thus, Plaintiffs do not allege facts to show an agency relationship between TG and the valet attendant or Advantage, and the Court **DISMISSES** Plaintiffs' vicarious-liability claim against TG without prejudice.

B.    *Plaintiffs' TTLA Claim Against TG Is Dismissed.*

Because Plaintiffs do not sufficiently allege vicarious liability, they also fail to state a claim against TG for theft under the TTLA. *See* Doc. 7, Second Am. Compl., ¶¶ 31–37.

Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003. To prevail on a theft claim under the TTLA, a plaintiff must establish: (1) he or she "had a possessory right to [the] property"; "(2) the defendant unlawfully appropriated [the] property" with intent to deprive the plaintiff of the property; "and (3) the plaintiff sustained damages as a result of the theft." *Olufemi-Jones v. Bank of Am., N.A.*, 2013 WL 1482544, at *3 (N.D. Tex. Apr. 10, 2013) (citing Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003; Tex. Penal Code § 31.03(a)).

Plaintiffs allege that "[e]mployees or agents of [TG] and/or Advantage unlawfully appropriated the personal property of Plaintiffs with no intent to return the property." Doc. 7, Second Am. Compl., ¶ 32. Plaintiffs do not allege that TG is directly liable under TTLA for theft.

Rather, they claim that TG is "responsible to . . . Plaintiffs for the unlawful conduct" of the valet attendant, as TG's "employee[] or agent[] . . . acting within the scope of [his or her] employment or agency." *Id.* ¶ 35. As discussed, however, Plaintiffs failed to state a claim for TG's vicarious liability. *See supra* Section III.A. Because Plaintiffs' TTLA claim is dependent on their claim for vicarious liability, Plaintiffs also fail to state a claim for theft under the TTLA. Accordingly, the Court **DISMISSES** Plaintiffs' TTLA claim against TG without prejudice.

C.    *Plaintiffs' Breach-of-Contract Claim Against TG Is Dismissed.*

Next, Plaintiffs fail to sufficiently allege a breach-of-contract claim against TG because they fail to allege a valid contract between Plaintiffs and TG. *See* Doc. 7, Second Am. Compl., ¶¶ 38–42.

The elements of a breach-of-contract claim under Texas law are: "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.) (citation omitted).

Plaintiffs allege that they "contracted with Defendants [TG] and/or Advantage to park and safeguard Plaintiffs' vehicle and their personal property contained therein." Doc. 7, Second Am. Compl., ¶ 39. Thus, Plaintiffs claim that "by either stealing Plaintiffs' personal property or allowing the personal property to be stolen by third parties," TG "and/or Advantage breached the contract with Plaintiffs[.]" *Id.* ¶ 41. However, as Defendants point out, Plaintiffs fail to allege facts that show that TG was a party to any alleged contract. *See* Doc. 11, Defs.' Mot., ¶ 13.

Plaintiffs allege that contract was "establish[ed]" when "Plaintiffs delivered to [TG] and/or Advantage the vehicle and personal property and [TG and/or Advantage] accepted the vehicle and personal property[.]" Doc. 7, Second Am. Compl., ¶ 40. However, the facts alleged show that

Plaintiffs delivered the vehicle to the valet attendant, and the attendant accepted the vehicle and personal property. *See id.* ¶ 15. As discussed, Plaintiffs fail to allege an agency relationship between TG and the valet attendant. *See supra* Section III.A. Thus, the valet attendant could not bind TG to a contract with Plaintiffs. And Plaintiffs do not offer any facts to suggest that TG was otherwise a party to the valet agreement with Plaintiffs. *See generally* Doc. 7, Second Am. Compl.

Accordingly, Plaintiffs fail to adequately allege the existence of a valid contract between Plaintiffs and TG and thus fail to state a claim for breach of contract. Accordingly, the Court **DISMISSES** Plaintiffs' breach-of-contract claim against TG without prejudice.

D.   *Plaintiffs' Conversion Claim Against TG Is Dismissed.*

Plaintiffs fail to state a claim against TG for conversion because they do not sufficiently allege vicarious liability. *See id.* ¶¶ 43–49.

Plaintiffs allege that TG "and/or Advantage and their employees or agents . . . unlawfully appropriated the personal property of Plaintiffs with the intent to deprive Plaintiffs the ownership of the property." *Id.* ¶ 44. Like their TTLA claim, Plaintiffs seek to hold TG vicariously liable for the acts of the valet attendant. *See id.* As discussed, however, Plaintiffs failed to state a claim for vicarious liability. *See supra* Section III.A. Therefore, Plaintiffs fail to state a claim for conversion against TG and the Court **DISMISSES** this claim without prejudice.

E.   *Plaintiffs' Negligence Claim Against TG Is Dismissed.*

Plaintiffs fail to state a claim for negligence against TG because they do not allege facts that would impose a duty on TG to prevent the alleged crime. *See* Doc. 7, Second Am. Compl., ¶¶ 50–53.

The elements of a negligence cause of action are "a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach." *Lee Lewis Constr.,*

*Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). "'[D]uty' is the threshold question in connection with any negligence claim. If there is no existence and violation of a legal duty, then there can be no legal liability for negligence." *In re Thrash*, 433 B.R. 585, 596 (Bankr. N.D. Tex. 2010) (citations omitted).

Plaintiffs allege that TG "breached . . . [its] dut[y] of care in failing to protect and keep safe the vehicle and the personal property contained in the vehicle by causing the personal property to be lost due to [its] . . . actions or inactions." Doc. 7, Second. Am. Compl., ¶ 52. However, "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) (citations omitted). As discussed below, Plaintiffs do not adequately allege that TG breached the duty owed to Plaintiffs as invitees. *See infra Section* III.G. And Plaintiffs do not allege any other special relationship between Plaintiffs and TG or circumstances that would impose a duty on Defendants to prevent the alleged theft. *See generally* Doc. 7, Second Am. Compl.

Because Plaintiffs fail to allege that TG owed a duty—other than that owed to invitees—to protect Plaintiffs' property from theft, the Court **DISMISSES** Plaintiffs' negligence claim against TG.

F.   *Plaintiffs' Negligent-Entrustment Claim Against TG Is Dismissed.*

Plaintiffs fail to state a claim against TG for negligent entrustment because they do not allege facts to satisfy four out of the five necessary elements for such a claim. *See id.* ¶¶ 54–57.

To succeed on a negligent-entrustment claim in Texas, a plaintiff must show:

> (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless[;] (4) that the driver was negligent on the occasion in question[;] and (5) that the driver's negligence proximately caused the accident.

*Wright v. Weaver*, 516 F. App'x 306, 309 (5th Cir. 2013) (per curiam) (alterations incorporated) (quoting *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987)).

Plaintiffs allege that TG negligently entrusted "Plaintiffs' vehicle and personal property[] to the custody and control of persons who [TG] knew or should have known would fail to protect and keep safe the vehicle and the personal property contained in the vehicle[.]" *See* Doc. 7, Second Am. Compl., ¶ 56. However, as Defendants argue, "Plaintiffs fail to allege that an unlicensed, incompetent, or reckless driver took possession of Plaintiffs' vehicle or that TG must have known or had reason to know that the driver was an unlicensed, incompetent, or reckless driver." Doc. 11, Defs.' Mot., ¶ 20. Further, Plaintiffs are the vehicle owners who entrusted their vehicle to the valet attendant, and no accident resulted. *See* Doc. 7, Second Am. Compl., ¶ 3.

Plaintiffs thus fail to plead facts to satisfy the elements of a negligent-entrustment claim. *See Wright*, 516 F. App'x at 309 (citation omitted). Accordingly, the Court **DISMISSES** Plaintiffs' negligent-entrustment claim against TG without prejudice.

G.   *Plaintiffs' Premises-Liability Claim Against TG Is Dismissed.*

Plaintiffs fail to state a claim against TG for premises liability because they fail to allege facts that would impose a duty on TG to foresee the alleged criminal activity. *See* Doc. 7, Second Am. Compl., ¶¶ 58–66.

In Texas, "premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). To establish a premises-liability claim "the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach." *Del Lago*, 307 S.W.3d at 767 (citation omitted).

Property owners "owe[] invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known. *Id.* However, that duty does generally not require a property owner "to protect invitees from criminal acts by third parties" unless "the owner knows or has reason to know of a risk of harm to invitees that is unreasonable and foreseeable." *Id.* (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998)). Texas courts consider certain factors to "analyz[e] how prior criminal conduct influences 'what the premises owner knew or should have known' before the criminal act that injured the plaintiff." *Id.* (quoting *Timberwalk*, 972 S.W.2d at 757). These factors include: "proximity, recency, frequency, similarity, and publicity" of prior criminal acts. *Id.*

Plaintiffs have alleged, and Defendants do not dispute, that they were invitees, as the facts indicate they "entered [TG's] property on the business of or to the benefit of" TG. *See McClure v. Rich*, 95 S.W.3d 620, 625 (Tex. App.—Dallas 2002, no pet.) (citing *Cowart v. Meeks*, 111 S.W.2d 1105, 1107 (Tex. 1938)); Doc. 7, Second Am. Compl., ¶¶ 10–11. To prove that TG breached its duty, Plaintiffs must show that TG "knew or should have known" of an unreasonable and foreseeable risk that the valet attendant would commit theft. *See Del Lago*, 307 S.W.3d at 767. However, Plaintiffs fail to allege facts that would support TG's actual or constructive knowledge.

Plaintiffs claim that TG owed them a duty "to maintain safe premises at which personal property is not likely to be stolen from the vehicles," which TG breached "by failing to maintain safe premises[.]" Doc. 7, Second Am. Compl., ¶¶ 60–61. Particularly, Plaintiffs claim that TG "had constructive or actual knowledge" of the "dangerous conditions of dark and poorly surveilled parking lots [that] allowed Plaintiffs' personal property to be stolen from their vehicle." *Id.* ¶¶ 64–65.

However, Plaintiffs do not allege facts related to the "proximity, recency, frequency,

similarity, and publicity" of the risk of theft at Trinity Groves. *See Del Lago*, 307 S.W.3d at 768; *see generally* Doc. 7, Second Am. Compl. While they allege that "dangerous conditions of dark and poorly surveilled parking lots allowed [their] personal property to be stolen from their vehicle," Doc. 7, Second Am. Compl., ¶ 64, darkness and poor surveillance alone do not make the valet attendant's theft any more foreseeable as to impose a duty on TG. Accordingly, Plaintiffs' allegations are insufficient to establish that TG knew or should have known about the risk of theft.

Because Plaintiffs fail to allege facts showing TG's actual or constructive knowledge of the risk of theft committed by a valet attendant, they fail to state a claim for premises liability. Accordingly, the Court **DISMISSES** Plaintiffs' premises-liability claim without prejudice.

H.  *Plaintiffs' § 2000a Claims Against TG and McGregor Are Dismissed.*

Plaintiffs fail to state claims against TG and McGregor for civil-rights violations under § 2000a because (1) a § 2000a claim does not allow for monetary damages, and (2) Plaintiffs fail to allege facts showing that they were denied services for which they attempted to contract or that those services were made available to similarly situated persons outside of their protected class. *See id.* ¶¶ 67–77.

Under § 2000a(a), "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."

Plaintiffs allege that they "attempted to exercise the rights and full benefits of the parking services offered by TG, LLC and Advantage, but they were denied those benefits." Doc. 7, Second Am. Compl., ¶ 74. Specifically, they allege that their "property would not have been stolen from their

vehicle if [they] were White" and that "Plaintiffs' claims of theft were not treated seriously because they were Black, but . . . would have been treated seriously" if Plaintiffs were White. *Id.* ¶¶ 76–77. Plaintiffs' allegations are insufficient to state a claim for the relief they seek.

First, as Defendants argue, "Plaintiffs seek only monetary damages, and such relief is not available under the statute." Doc. 11, Defs.' Mot., ¶ 25 (citations omitted). Indeed, Plaintiffs only seek actual damages, punitive damages, and interest. Doc. 7, Second Am. Compl., ¶¶ 91–96. However, a violation of a person's rights under § 2000a only permits "the person aggrieved" to initiate "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order[.]" 42 U.S.C. § 2000a-3. Except for an award of reasonable attorney's fees, relief for a § 2000a violation "is limited to injunctive relief." *Gebru v. Sears, Roebuck & Co.*, 2009 WL 2705508, at *3 (N.D. Tex. Aug. 28, 2009) (citations omitted); *see also Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968)). Plaintiffs' § 2000a claims are not plausible claims for the relief they seek and thus do not survive Defendants' motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Second, because the Court anticipates that Plaintiffs may simply add a demand for injunctive relief upon repleading, the Court addresses Defendants' argument that Plaintiffs do not allege facts sufficient to state a claim under § 2000a. *See* Doc. 11, Defs.' Mot., ¶¶ 24–27. To establish a *prima facie* case under § 2000a, a plaintiff must show: "(1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008). Though Defendants do not dispute that Plaintiffs are members of a protected class or that Trinity Groves is a public

accommodation, *see generally* Doc. 11, Defs.' Mot., Defendants argue that Plaintiffs do not adequately allege the third and fourth elements of a § 2000a claim. *Id.* ¶¶ 25–26. The Court agrees.

As to the third element, Plaintiffs do not adequately allege that they were denied a service for which they contracted. *See Fahim*, 551 F.3d at 350. They claim that they were denied "the rights and full benefits of the parking services offered by TG," Doc. 7, Second Am. Compl., ¶ 74, and suggest that those services included protection against theft and access to a claims process through TG. *See id.* ¶¶ 74–77. But while Plaintiffs allege that "[t]hey contracted for valet/parking services with TG," *see id.* ¶ 78, it is unclear what other services—such as theft protection or access to a claims process—were included in the contract aside from the usual acts involved in valeting a vehicle. And Plaintiffs acknowledge that the valet attendant parked Bowers's vehicle upon Plaintiffs' arrival and returned it to them after dinner. *Id.* ¶¶ 14–18. Plaintiffs offer no contractual language to show that they contracted for a service beyond the parking and retrieval of Bowers's vehicle. *See generally id.* Thus, Plaintiffs fail to adequately allege that they contracted for the services they claim were denied.

As to the fourth element, Plaintiffs fail to allege that "the services were made available to similarly situated persons outside [their] protected class." *See Fahim*, 551 F.3d at 350. Plaintiffs' allegations that their "property would not have been stolen from their vehicle if Plaintiffs were White" and that "their claims would have been treated seriously if the claims had been made by White persons" are insufficient, Doc. 7, Second Am. Compl., ¶¶ 76–77, as they lack context and are "devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). And while some courts apply "a modified version of the fourth element," which considers "whether the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory," Plaintiffs do not allege facts to satisfy the

modified version, either.² *See Thymes v. AT&T Mobility Servs., LLC*, 2019 WL 1768311, at *11 (W.D. La. Mar. 19, 2019) (citing *Fahim*, 551 F.3d at 350 n.2). Indeed, Plaintiffs only allege that during the phone calls, TG's employee and manager—who was possibly McGregor— "were rude and dismissive of" Bowers and that they "refused to provide information to allow Plaintiffs to be made whole for their losses[.]" Doc. 7, Second Am. Compl., ¶ 83. And though Plaintiffs claim that Defendants behaved in this manner "because [Bowers] was Black," *id.*, they do not allege facts to support this discriminatory motive. *See id.* Plaintiffs do not state what was said to Bowers or even that TG's employee or McGregor were aware that Bowers was Black prior to responding rudely to him. *See generally id.* Accordingly, Plaintiffs fail to state claims against TG and McGregor under § 2000a.

Because § 2000a does not permit the relief Plaintiffs seek and Plaintiffs otherwise fail to allege facts sufficient to state a claim, their § 2000a claims against TG and McGregor are **DISMISSED** without prejudice.

I.     *Plaintiffs' § 1981 Claims Against TG and McGregor Are Dismissed.*

Finally, Plaintiffs fail to state claims against TG and McGregor under § 1981 because Plaintiffs fail to adequately allege discriminatory intent. Doc. 7, Second Am. Compl., ¶¶ 78–85.

Under § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts[.]" The phrase "make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

---

² "The modified test is typically applied in cases involving restaurants, because plaintiffs 'are often unable to point to similarly situated persons outside of their protected class who were treated differently.'" *Thymes*, 2019 WL 1768311, at *11 (quoting *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 546 (S.D. Tex. 2016)).

relationship." § 1981(b). To maintain their § 1981 claims, Plaintiffs must allege that "(1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted)).

Like their § 2000a claims, Plaintiffs allege that they "contracted for valet/parking services with TG" and "were deprived of the full value of those services because their property was intentionally stolen" and "because they received the services in a markedly hostile manner which a reasonable person would find objectively discriminatory." Doc. 7, Second Am. Compl., ¶¶ 78, 80–81. These allegations are insufficient.

There is no dispute that Plaintiffs satisfied the first element of a § 1981 claim. *See generally* Doc. 11, Defs.' Mot. However, Defendants argue that dismissal is proper because "Plaintiffs fail to offer any facts to suggest that TG or McGregor were parties to any contract," and therefore, "neither TG or McGregor could have discriminated against Plaintiffs in the 'making or enforcement' of a contract under § 1981[.]" Doc. 11, Defs.' Mot., ¶ 29. Moreover, Defendants argue that Plaintiffs' Second Amended Complaint "is completely [de]void of any factual allegations regarding McGregor or TG's" discriminatory intent. *Id.* ¶ 30.

To address Defendants' first argument, "it is not clear whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim." *Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002). Indeed, the Fifth Circuit "has not yet decided whether a plaintiff has a cause of action under section 1981 against a third party for interference with the plaintiff's right to make and enforce contracts." *See id.* (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). In light of § 1981's broad language and the Fifth Circuit's reluctance to narrow its scope, the

Court declines to find that § 1981 claims can only be asserted against parties to a contract. Therefore, even if TG and McGregor were not "parties to any contract" with Plaintiffs, the Court rejects this argument as a basis for dismissal. *See* Doc. 11, Defs.' Mot., ¶ 29.

However, the Court agrees with Defendants' second argument that Plaintiffs fail to sufficiently allege any discriminatory intent by McGregor and TG. *See id.* ¶ 30. As they did in their § 2000a claims, Plaintiffs allege that they "were deprived of the full value of [valet/parking services] because their property was intentionally stolen by TG" and "were discriminated against when Mr. Bowers attempted to seek recompense . . . for Plaintiffs' losses." Doc. 7, Second Am. Compl., ¶¶ 79–82. They state that TG and McGregor's "rude and dismissive" response to Bowers "would not have been the response for a White customer[.]" *Id.* ¶ 83. However, "generalized allegations regarding Defendants' alleged disparate treatment of [Plaintiffs] versus" White persons "are not specific enough to plead discriminatory intent" because "[t]hey fail to identify which Defendant discriminated or specific instances" where a White person received "the full value of" the "valet/parking services[.]" *See Body by Cook*, 869 F.3d at 387; Doc. 7, Second Am. Compl., ¶¶ 78–85. Indeed, Plaintiffs offer no allegations of specific instances or explanations to support their claims that White persons would be treated differently. *See generally* Doc. 7, Second Am. Compl.

Plaintiffs fail to sufficiently allege Defendants' discriminatory intent and thus fail to sufficiently plead a claim under § 1981. *See Body by Cook*, 869 F.3d at 386. Accordingly, the Court **DISMISSES** Plaintiffs' § 1981 claims against TG and McGregor without prejudice.

J.      *The Court Grants Plaintiffs Leave to Amend.*

Plaintiffs ask for leave to amend if the Court finds their claims to be inadequately pleaded. Doc. 14, Pls.' Resp., 13.

Given that this is the Court's first opportunity to assess the sufficiency of Plaintiffs' allegations, the Court finds it appropriate to provide Plaintiffs one chance to amend their complaint in its entirety in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court **ORDERS** Plaintiffs to file an amended complaint within **THIRTY (30)** days of the date of this Order.

*K.    Defendants' Request for Attorney's Fees Is Denied.*

In their motion to dismiss, Defendants assert that they are entitled to attorney's fees "[i]n the event the Court rules in TG's favor as to the violation of the Texas Theft Liability Act[.]" Doc. 11, Defs.' Mot., ¶ 31 (citation omitted).

Indeed, the TTLA provides that "[e]ach person who prevails" on a TTLA claim "shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). However, because the Court permits Plaintiffs to amend their pleadings, Defendants have not prevailed on the TTLA claims at this time. Thus, the Court **DENIES** their request for attorney's fees **WITHOUT PREJUDICE**.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs fail to allege facts to state a claim against TG and McGregor. Accordingly, the Court **GRANTS** Defendants TG and McGregor's Motion to Dismiss (Doc. 11) and **DISMISSES** Plaintiffs' claims against TG and McGregor **WITHOUT PREJUDICE**.

The Court further **ORDERS** Plaintiffs to file any amended complaint addressing the deficiencies identified in this Order within **THIRTY (30)** days of the date of this Order. Finally, the

Court **DENIES** Defendants' request for attorney's fees.

    SO ORDERED

    SIGNED: August 20, 2021

                                                     _____
                                                     JANE J. BOYLE
                                                     UNITED STATES DISTRICT JUDGE